# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TAMMY L. HILL,

     Plaintiff,

v.                           CASE NO. 8:19-cv-121-T-TGW

ANDREW SAUL,
Commissioner of Social Security,[1]

     Defendant.

_____/

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[2] Because the decision of the Commissioner of Social Security fails to include in the plaintiff's residual functional capacity functional limitations from the plaintiff's severe impairment of migraine headaches, the decision will be reversed and the matter remanded for further proceedings.

---

[1]Andrew M. Saul became the Commissioner of Social Security on June 17,2019, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

I.

The plaintiff, who was fifty-three years old at the time of the administrative hearing and who has an eleventh-grade education (Tr. 824, 46), has worked as an assistant, in convention services, and as a department store stocker (Tr. 1009). She filed a claim for supplemental security income payments, alleging that she became disabled due to back surgery, right knee surgery, and "brain injury neck" (Tr. 825). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge issued an unfavorable decision on October 1, 2014 (Tr. 133). The plaintiff requested review by the Appeals Council on October 17, 2014 (Tr. 14–18). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner (Tr. 1–6).

On June 30, 2016, the plaintiff sought review in the United States District Court for the Middle District of Florida (Tr. 820–23; No. 8:16-cv-1899-T-DNF, 2017 WL 4161670). United States Magistrate Judge Douglas M. Frazer entered an Order remanding the plaintiff's case for further administrative proceedings (No. 8:16-cv-1899-T-DNF, 2017 WL

4161670; Tr. 856–65). Accordingly, the Appeals Council vacated the decision of the Commissioner, and remanded the case to a law judge for further proceedings consistent with the district court's Order (Tr. 874–75).

After the remand hearing, the law judge issued an unfavorable decision (Tr. 726–51). The law judge found that the plaintiff had severe impairments of "degenerative joint disease/degenerative disc disease, lumbar spine; degenerative disc disease/degenerative joint disease, cervical spine; carpal tunnel syndrome, bilaterally; chronic pain syndrome; arthritis; endometriosis; hyperlipidemia; migraine headaches, obesity; fibromyalgia; hypertension; obstructive sleep apnea and chronic obstructive pulmonary disease" (Tr. 731). He concluded that these impairments restricted the plaintiff to light work with the following additional limitations (Tr. 733):

> The claimant cannot push or pull with the upper or lower extremities. The claimant cannot climb ropes, ladders, scaffolds, stairs or ramps. The claimant can occasionally balance and stoop. The claimant can never kneel, crouch or crawl. The claimant can frequently use her hands (perform fine and gross manipulation). The claimant must avoid concentrated exposure to fumes, gases, dust and odors. The claimant must avoid unprotected heights. The claimant is limited to performing jobs that can be learned in

thirty days with occasional decision making or exercise of judgment in job performance. The claimant can have occasional work related interaction with the public and frequent interaction with co-workers and supervisors.

The law judge determined that the plaintiff did not have past relevant work (Tr. 742). Based upon the testimony of a vocational expert, the law judge found that jobs existed in significant numbers in the national economy that the plaintiff could perform, such as Marker/Pricer, Folder in Laundry, and Small Products Assembler (id.). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 743). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. 1382c(a)(3)(A). A physical or mental impairment, under the terms of the Act, is one that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the

evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff argues that the law judge erred by (1) failing to consider her combination of impairments; (2) failing properly to consider her credibility and subjective complaints; (3) failing properly to consider her migraine headaches; and (4) formulating an RFC and a hypothetical to the vocational expert that are both unsupported by substantial evidence (Doc. 25, pp. 18, 21, 26, 30).

The plaintiff's third argument regarding migraine headaches has merit and warrants remand. Consequently, the other three issues are pretermitted because a new decision will be issued upon remand.

IV.

The third issue the plaintiff raises is that the law judge did not properly consider her migraine headaches, because he did not adequately account for them in the residual functional capacity ("RFC") (id. at 26). The plaintiff asserts that the "RFC simply does not account for the severity, and most importantly the frequency, of Ms. Hill's headaches" (id. at 27).

The fundamental problem is that the law judge found that the plaintiff's migraine headaches were a severe impairment, but did not include any functional limitations in the RFC to accommodate that impairment. The finding that the migraine headaches were a severe impairment means that they significantly limit her physical or mental ability to do basic work activities. 20 C.F.R. 404.1520(c). Thus, in determining the plaintiff's RFC the law judge would need to include some functional restriction in order to satisfy this significant limitation. See 20 C.F.R. 416.945. At the very least, the law judge would have to explain why he did not include in the RFC

a functional limitation from the plaintiff's severe impairment of migraine headaches. However, the law judge did not include any limitation in the RFC which could plausibly accommodate the migraine headaches, nor did he provide any explanation why he did not.

The law judge seemed to equivocate about the plaintiff's migraine headaches. Thus, he noted medical records from 2014 and 2015 in which the plaintiff denied headaches (Tr. 736–37). However, the records indicate that the plaintiff's headache problem worsened.

Dr. Elizabeth Warner treated the plaintiff for her headaches from March 2016 (Tr. 1156–61) to December 2017 (Tr. 1554–69). On her first visit with Dr. Warner on March 25, 2016, Dr. Warner noted the plaintiff's history of headaches and prescribed medication for migraines. Dr. Warner's treatment notes state (Tr. 1156):

> She [has] a long history of headaches. She states in the last few months [they've] been more intense. She'll [get] bilateral headaches, associated with occasional nausea no vomiting but severe debility. She has significant photophobia. She typically takes an Excedrin headache tablet and they will improve in about 15 minutes.

Dr. Warner's Progress Notes from an April 2017 visit state (Tr. 1445):

> Chronic headaches; has photophobia. Has tried
> nadolol and veramapil; neither helped. She
> reports headaches are 3 days/week. She went to
> the ER 4/22/17 for headache; they gave her IV
> fluids Reglan and Benadryl. Waiting for
> neurology appointment.

Dr. Warner's Progress Notes from June 28, 2017, state (Tr. 1507):

> Ms. Hill returns for follow-up. Chronic
> headaches; we recommended increasing
> nortriptyline to 100 mg/day, but she is out of the
> medication. She is also making magnesium
> [h]as nausea and photophobia. Has tried nadolol
> and veramapil; neither helped. Trial of
> tizanidine ineffective. She needs a dark room.
> She reports headaches are about 3 times/week.

On November 8, 2017, Dr. Warner listed the plaintiff's active

problems as including diagnoses of intractable migraine without aura and

without status migrainosus; migraine without aura and without status

migrainosus, not intractable; and chronic headache (Tr. 1545). Dr.

Warner's Progress Notes state (Tr. 1544):

> Ms. Hill returns for follow up. She was admitted
> to [Tampa General Hospital] for two nights in
> August 2017 for chest pain and headaches. They
> recommended starting propranolol and continuing
> nortriptyline. However, she lost her hCHCP and
> wasn't able to fill the prescriptions.

The plaintiff also cites additional evidence in the record supporting the plaintiff's assertion that her migraine headaches create functional limitations that should be included in the RFC (Doc. 25, p. 28–29).

- January 29, 2016, TGH ER visits for headaches (Tr. 1075). Severe headaches for 3 days BP elevated 159/102, 173/109.
- March 24, 2016, follow up from her January 29, 2016 ER visit began treatment at Tampa General Family Clinic with Dr. Warner who notes long history of headaches which have been more intense last four months with debilitating and significant photophobia (Tr. 1156). [Sh]e prescribed 50 mg Imitrex and 25 mg Elavil for headaches (Tr. 1262).
- September 14, 2016, Dr. Warner diagnosed chronic migraine headaches and changed her migraine headache medication from Elavil and Imitrex to 5 mg Rizatripan (Tr. 1282-1283, 1286-1289).
- October 20, 2016, Dr. Warner notes still having chronic headaches and migraines. Rizatripan increased from 5 mg to 10 mg (Tr. 1335, 1344-1345) BP elevated 168/81 (Tr. 1346).
- January 26, 2017, Mr. Hill complained to Dr. Warner her migraine headache medication is not working (Tr. 1356, 1374-1375). She switched her to 20 mg Nadolol (Corgard) (Tr. 1361).
- February 23, 2017, Dr. Warner discontinued Nadolol because of side effects and switched

her to 70 mg Verapamil for her migraine (Tr. 1390, 1365-1391).

- April 25, 2017 Ms. Hill reports migraine headaches were not getting better, and she is having them three days a week. She had just been to ER for headache on April 22nd. Dr. Warner notes the Propanolol and Verapamil did not help so [s]he began a 14 day trial of Tizanadine (Tr. 1445, 1444).
- June 28, 2017 Ms. Hill's chief complaint still her headaches. Tinazindine not effective and Ms. Hill still needing a dark room, had nausea and photophobia and having headaches three times a week (Tr. 1507).
- August 16, 2017 Ms. Hill had just been hospitalized for chest pain and headaches at TGH. She had lost her insurance so was unable to fill her prescriptions at discharge of Propranolol and missed her neurology appointment (Tr. 1544). Dr. Warner restarted her on Propranolol.
- December 4, 2017 Ms. Hill presented with hypertension and Dr. Warner noted it was likely aggravated due to pain [from] her migraines (Tr. 1563, 1568). Dr. Warner increased her Nortriptyline to 150mg and changed her Propanolol to Extended release for adherence. Dr. Warner noted her headaches were not well controlled and she gets them every day (Tr. 1564). Dr. Warner noted her blood pressure reading have been high for months and was 178/106 at that visit (Tr. 1565-1566).
- February 12, 2018 it was noted Ms. Hill taking her medications regularly.

- March 8, 2018 Ms. Hill say Dr. McIver, at USF neurology who changed her headache medications to 600 mg Gabapentin because they were not working. Dr. McIver notes her "headaches are too frequent to have rescue medication prescribed at this time" (Tr. 1712). Dr. McIver notes she is having headaches 10 time[s] per month for about one hour (Tr. 1711). Blood pressure was elevated 169/104.

This evidence clearly supports the law judge's finding that the plaintiff's migraine headaches were a severe impairment (if it does not compel it). But having concluded that the migraine headaches were a severe impairment, the law judge could not disregard the impairment when determining the plaintiff's RFC, which is what the law judge appears to have done.

The law judge reasonably could have concluded that the headaches were not a severe impairment during the first part of the period at issue, which started in mid-2012. However, the evidence indicates that by at least 2016 the plaintiff's migraine headaches reached the level of a severe impairment.

Notably, the Commissioner did not meaningfully address the law judge's failure to ascribe functional limitations to the plaintiff's severe

impairment of migraine headaches. He merely makes the conclusory assertion that the "Plaintiff failed to show her headaches caused limitations greater than the ALJ found in her RFC" (Doc. 26, p. 14). This is no answer to the law judge's deficient treatment of the plaintiff's migraine headaches. Having found that the migraine headaches were a severe impairment, the law judge either had to include functional limitations in the RFC to accommodate that impairment or explain why he did not. He did neither. That failure warrants reversal. Reis v. Astrue, No. 8:11-cv-2027-T-TGW, 2012 WL 3231092, at *1, *4 (M.D. Fla. 2012); Sampson v. Astrue; No. 8:10-cv-708-T-TGW, 2011 WL 1810499, at *1, *3 (M.D. Fla. 2011).

For the reasons stated, it is, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is hereby **REVERSED** and the matter remanded for further proceedings. The Clerk shall enter judgment accordingly and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this __24th__ day
of March 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE